2013 BNH 016

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:

                Bk. No. 10-14948-BAH
                Chapter 7

Paul Bouley &
Cynthia Bouley,
        Debtors


Timothy P. Smith,
Chapter 7 Trustee,
        Plaintiff,

v.

                Adv. No. 13-01008-BAH

The Quizno's Master LLC, et al.
        Defendants

*John J. Washburn*
*Law Office of John Washburn*
*Nashua, New Hampshire*
*Attorney for the Plaintiff*

*Peter N. Tamposi*
*The Tamposi Law Group*
*Nashua, New Hampshire &*
*Fredric A. Cohen*
*Cheng Cohen, LLC*
*Chicago, Illinois*
*Attorneys for the Defendants*

### Memorandum Opinion

## I.    INTRODUCTION

This is the defendants' motion to dismiss the plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). The defendants assert that the plaintiff's claims are untimely under the

franchise agreement governing the relationship of the parties.  The defendants also claim that the plaintiff has brought this suit in the wrong forum.  The plaintiff responds with an attempt to undermine the franchise agreement as a whole.  He argues that the defendants procured the agreement by fraud and that the agreement is itself is unconscionable.  Ultimately, the plaintiff wants the Court to deem the relevant provisions of the agreement ineffective as a matter of law so that this proceeding may continue.  For the reasons set forth below, the Court shall deny the motion to dismiss and transfer this proceeding to the United States District Court for the District of Colorado.

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a non-core proceeding, related to a case arising under title 11 of the United States Code.  The parties have consented to this Court entering final orders pursuant to 28 U.S.C. § 157(c)(2).

## II.	FACTS

The plaintiff in this adversary proceeding is the chapter 7 trustee (the "Plaintiff") of the bankruptcy estate of Paul and Cynthia Bouley (the "Debtors"), who once owned and operated an unprofitable and ultimately unsuccessful Quizno's franchise.  The defendants are an assortment of corporate entities and two individuals, Richard E. Schaden and Richard F. Schaden (collectively the "Defendants").[1]  The entities are each incorporated in Delaware and have their principal place of business in Colorado.  The individuals reside in Colorado.  These individuals

---

[1]  The corporate defendants are The Quizno's Master LLC, Quizno's Franchising II LLC, TQSC II LLC, QIP Holder LLC, QCE Holding LLC, QCE Finance LLC, QCE LLC, and QAFT, Inc.  The exact structure and relationships among these individuals and entities is convoluted and not relevant in the context of this motion to dismiss.

and entities are—or were—involved with owning and operating the national Quizno's sandwich franchise.

For the purpose of this motion to dismiss, the Court accepts the allegations in the complaint as true. The Plaintiff alleges the Defendants exploited the Debtors' lack of business knowledge, fraudulently duping them into signing the franchise agreement (the "Agreement") without fully disclosing the costs and risks of owning and operating a Quizno's sandwich franchise. According to the Plaintiff, the Defendants perpetrated this scheme on a massive scale involving thousands of other people just like the Defendants.[2] The Defendants profited from this scheme by charging royalty and advertising fees to the Debtors, as well as selling them the food and supplies necessary to run the sandwich business, all at inflated prices. Eventually the scheme drove the Debtors out of business and into bankruptcy.

This series of events began in May 2005 when the Debtors attended a Quizno's informational seminar on how to become Quizno's franchisees. The Plaintiff alleges the seminar was highly structured and very misleading, falsely showing the great success of many Quizno's franchisees. The Defendants made many representations at the seminar, including statements about the average profitability of Quizno's franchises, how supportive Quizno's was of its franchisees, and how easy it would be for the Debtors to open their own location. At this meeting, the Debtors obtained a franchise application and other materials. This application was approved during the May 2005 meeting, and the Plaintiff alleges that despite this approval, the Defendants should have been aware of the Debtors' unsuitability to become Quizno's

---

[2] The Court takes judicial notice of the fact that the Defendants are no strangers to litigation involving allegations of this type. The Plaintiff cites half-a-dozen similar cases involving Quizno's defendants, some of which the Court refers to below. Of course, the Court does not give any evidentiary weight to the quantity of lawsuits filed against Quizno's defendants, but merely notes that the factual allegations in those cases appear to be generally consistent with those in the Plaintiff's complaint.

franchisees.  Notably, the application and other materials did not include a copy of a disclosure document, the Uniform Franchise Offering Circular, which the Plaintiff alleges the Federal Trade Commission requires franchisors to provide to prospective franchisees.

Debtor Paul Bouley signed the Agreement in June 2005, relying on the many representations of the Quizno's representatives.  Both Debtors signed personal guarantees of the obligations in the Agreement.[3]  During the signing process, Quizno's representatives allegedly coached and directed the Debtors on where to sign and discouraged them from reviewing the Agreement in detail.  Neither Debtor had any experience reviewing or negotiating detailed contracts such as the Agreement.  According to the complaint,  Paul Bouley stated that he wanted to have a lawyer review the Agreement and was told it would be a waste of money, that nothing in the Agreement could be changed, and that insisting upon having counsel review the Agreement would needlessly delay the process.  The Defendants' representatives assured the Debtors that their advice was in the Debtors' best interests.

After much difficulty, the Debtors opened their Quizno's location in Belmont, New Hampshire, in 2006.  The Plaintiff alleges that the Defendants forced the Debtors to use an unsuitable location and that the Defendants should have known it was unsuitable.  The Defendants also did not provide the promised support to aid the Debtors in opening the store.  Specifically, the Debtors were required to spend $6,000 on particular items for a "grand opening" of their new location, but many of the items were unusable.  Additionally, the Defendants did not provide the Debtors with any assistance with difficulties they had with their new landlord, the town, and a contractor, whom the Defendants had approved.

---

[3] While both Debtors signed these documents in their individual capacities, only the debtor Paul Bouley signed the Agreement itself; thus, under the Agreement he is the "Franchisee."  The complaint alleges, and the Defendants do not dispute, that debtor Cynthia Bouley signed a personal guarantee of the Franchisee's obligations under the Agreement.  The guarantee documents are not currently in the record before the Court.

The operation of the store itself did not go well. The Plaintiff alleges that the Defendants engaged in a scheme to conceal the profit they made by requiring the Debtors to purchase food and other necessary supplies from specific vendors. The Defendants told the Debtors they were receiving volume discounts on these supplies, but in reality the Debtors purchased them at inflated prices. The Defendants allegedly received the benefit of these sales in the form of "kickbacks" from the vendors. The Plaintiff claims that this scheme was so extensive that the Defendants' true business model was actually to profit mainly from the selling of supplies to franchisees, like the Debtors. All the while, the Defendants hid this setup from the Debtors and made them think they were getting a good deal.

The Defendants purportedly made the operation of the Debtors' store difficult by effectively requiring the Debtors to participate in coupon programs. These programs forced the Debtors to sell their food at a large discount, without reimbursement from the Defendants. The Plaintiff alleges that the coupon program, on top of the supply scheme, effectively made it impossible for the Debtors to perform the terms of the Agreement.

The Plaintiff also alleges that during the entire time the Debtors' store was operational, the Defendants told them their location was doing well, despite knowing that it was unprofitable. During these communications, the Defendants promised to go on an "advertising blitz" that would soon make the store even more profitable. The Plaintiff alleges that the Defendants never engaged in any real advertising of the Debtors' store, despite requiring them to regularly pay a hefty fee, earmarked for such costs. In July of 2010, after several years of trying to make it work and despite their best efforts, the Debtors finally confronted the reality that their Quizno's franchise was unsustainable. They closed the store and filed a petition under chapter 7 of the Bankruptcy Code several months later.

Timothy P. Smith was appointed chapter 7 trustee soon after the Debtors filed their bankruptcy petition. In January 2013, he filed the ten count complaint that instigated this adversary proceeding. The counts in the complaint are as follows: (I) violation of the New Hampshire Consumer Protection Act—N.H. Rev. Stat. Ann. § 358-A; (II) breach of contract; (III) breach of the implied covenant of good faith and fair dealing; (IV) unjust enrichment; (V) intentional misrepresentation and fraud in the inducement; (VI) promissory fraud; (VII) breach of fiduciary duty; (VIII) negligence; (IX) negligent misrepresentation, and (X) civil conspiracy. In response to the complaint, the Defendants moved to dismiss pursuant to Rule 12(b)(6), alleging that the Plaintiff failed to state a claim for which relief could be granted.[4] The Defendants attached a copy of the Agreement to the motion to dismiss, as the Plaintiff had not attached a copy to the complaint.

The Defendants make two arguments in their motion to dismiss. First, they argue that the claims asserted in the complaint are untimely under the Agreement. Section 21, paragraph 21.4 of the Agreement provides for a one year limitations period on claims between the parties:

> Franchisee and the Bound Parties agree not to bring any claim asserting that any of the Marks are generic or otherwise invalid. Except with regard to Franchisee's obligation to pay Franchisor and its affiliates Royalty payments, the Marketing and Promotion Fee and other advertising fees, and other payments due from Franchisee pursuant to this Agreement or otherwise, any claims between the parties must be commenced within one (1) year from the date on which the party asserting the claim knew or should have known of the facts giving rise to the claim, or such claim shall be barred. The parties understand that such time limit might be shorter than otherwise allowed by law.[5]

---

[4] The Defendants filed two motions to dismiss. See Doc. Nos. 22 and 24. These motions are substantively the same and the Court shall treat them together, referring to a singular "motion to dismiss." Defendant QCE Finance did not participate in the filing of either of these motions to dismiss and has not otherwise answered, and thus is in default.

[5] As noted above, the debtor Paul Bouley is the "Franchisee." The term "Bound Party" is defined in the context of a non-competition restrictive covenant, at page 32, § 20, paragraph 20.1 of the Agreement,. Under the Agreement "Bound Party" appears to include the Franchisee, as well as the Franchisee's "officers, directors, shareholders,

6

The Defendants argue that "it was incumbent upon [the Plaintiff] to assert [the] claims by no later than July 2011." Def. Mot. Dismiss at 6. Because the Plaintiff did not file his complaint until January 2013, the Defendants conclude that the Agreement bars the complaint's claims.

Second, the Defendants argue that the adversary proceeding was filed in the wrong court. Section 21, paragraph 21.1 of the Agreement, entitled "Governing Law/Consent to Venue and Jurisdiction," reads as follows:

> Except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. §§ 1051 et seq.) or other federal law, this Agreement shall be interpreted under the laws of the State of Colorado, and any dispute between the parties, whether arising under this Agreement or from any other aspect of the parties' relationship, shall be governed by and determined in accordance with the substantive laws of the State of Colorado, which laws shall prevail in the event of any conflict of law. Franchisee and Franchisor have negotiated regarding a forum in which to resolve any disputes arising between them and have agreed to select a forum in order to promote stability in their relationship. Therefore, if a claim is asserted in any legal proceeding involving Franchisee or any Bound Party and Franchisor, the parties agree that the exclusive venue for disputes between them shall be the District Court for the City & County of Denver, Colorado, or the United States District Court for the District of Colorado, and each party waives any objection it might have to the personal jurisdiction of or venue in such courts.

Because the Debtors agreed to litigate "any disputes arising between them" exclusively in Colorado, the Defendants argue this proceeding should be dismissed without prejudice to re-filing in the proper forum.

The Plaintiff objects to both of the Defendants' arguments in favor of dismissal. First, he argues that the relevant provisions in the Agreement are unconscionable, given their content and the circumstances under which the Agreement was signed, and that the Court should consider those provisions void. Second, the Plaintiff argues that, as a matter of federal law, the forum

---

members, partners or other owners" and "any spouse or other immediate family members of Franchisee or any of these individuals." Thus, debtor Cynthia Bouley is a "Bound Party."

selection clause is unreasonable and, so, unenforceable. The Plaintiff does not argue that any of the claims asserted in his complaint are outside the purview of either the limitations provision or forum selection clause of the Agreement. After a hearing on the Defendants' motion to dismiss, the Court took the matter under advisement.

### III.  DISCUSSION

#### A.  Dismissal Standard Under Fed. R. Civ. P. 12(b)(6)

Bankruptcy Rule of Procedure 7012 applies Federal Civil Rule 12 to this adversary proceeding. In assessing motions to dismiss under Rule 12(b)(6), courts must engage in a two-step process to determine whether the challenged complaint states any claim upon which relief can be granted: (1) disregard conclusory allegations, and (2) accept the remaining factual assertions as true and, drawing all reasonable inferences in favor of the plaintiff, decide whether these facts are sufficient to state a claim for relief. Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Additionally, the allegations in a complaint must be plausible. Manning, 725 F.3d at 43 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The "plausibility inquiry is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Rodriguez-Reyes v. Molina Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013) (quotations omitted). Courts may "augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

In this case, the Court relies on the Agreement which, although it was not attached to the complaint, was referred to throughout in detail. "While documents not attached to the complaint

8

are ordinarily excluded from consideration on a motion to dismiss, see Fed R. Civ. P. 12(d), they may be consulted if their authenticity is not disputed by the parties, they are central to the plaintiff's claim, or they are sufficiently referred to in the complaint." Schaeffer v. Indymac Mortg. Servs, 731 F.3d 98, 100 n.1 (1st Cir. 2013) (quotations omitted). Here, all three of these conditions are satisfied.[6]

B. Choice-of-law

The Agreement contains a choice-of-law clause, which evinces the parties' intention for the Agreement to be interpreted under Colorado law. The Plaintiff argues that the choice-of-law clause should not apply, given the allegations of the Defendants' fraud and unconscionable conduct in the complaint. Instead, the Plaintiff would like the Court to use New Hampshire law to assay the Agreement because New Hampshire has the most substantial relationship to the controversy at hand.

Before deciding the effectiveness of the Agreement's choice-of-law clause, the Court must determine what law to apply in the first instance.[7] Generally, federal courts sitting in diversity apply the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941). The default choice-of-law rules are unsettled in the bankruptcy context, where the Congressional conferral of jurisdiction rests on a different statutory foundation.[8] See Bianco v. Erkins (In re Gaston & Snow), 243 F.3d 599 (2d Cir. 2001) (In the

---

[6] As noted above, a copy of the Agreement was attached as an exhibit to the motion to dismiss. At the hearing on the Defendants' motion to dismiss, the Court asked whether any of the parties objected to the Court relying on the Agreement at the dismissal stage; none of the parties did.

[7] The Court may not simply apply Colorado law, as that would beg the question.

[8] In In re Lindsay, 59 F.3d 942, 948 (9th Cir. 1995), the Ninth Circuit Court of Appeals turned to federal common law for the applicable choice-of-law rule. The court reasoned that bankruptcy jurisdiction was a type of federal question jurisdiction, in which forum shopping was not an issue—in the bankruptcy context the parties only have recourse to the federal forum—and, therefore, the value of national uniformity trumped the need to guard

9

bankruptcy context, "the federal courts are divided concerning whether federal choice of law rules or the choice of law rules of the forum state apply."); see Campbell v. Fawber, No. 1:11-1215, 2013 WL 1330153 at *17-19 (M.D. Pa. March 29, 2013) (containing an in-depth discussion of the state of the law in this area).  The Court does not need to resolve this complex issue presently, as the relevant federal choice-of-law rules and the New Hampshire rule are substantially the same.  Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004) ("The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions.").

New Hampshire applies the "significant relationship" test to determine whether a choice-of-law clause is enforceable.  Allied Adjustment Serv. v. Heney, 125 N.H. 698, 484 A.2d 1189, 1191 (1984) ("Where parties to a contract select the law of a particular jurisdiction to govern their affairs, that choice will be honored if the contract bears any significant relationship to that jurisdiction.").  In Allied, the parties selected Massachusetts law, which the Court determined bore a significant relationship to the contract because it was the place of business and state of incorporation of one of the contracting parties.  Id.  When using federal law to select the appropriate choice-of-law rule, courts often turn to the Restatement (Second) of Conflicts of Laws.  See, e.g., Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys. Inc.), 277 F.3d 1057, 1069-70 (9th Cir. 2002) (citing Chuidian v. Philippine Nat'l Bank, 976 F.2d 561, 564 (9th Cir. 1992)); Ferrari v. Barclays Bus. Credit, Inc. (In re Morse Tool, Inc.), 108 B.R. 384 (Bankr. D. Mass. 1989).  See also 19 Charles Alan Wright, Fed. Prac. & Proc. Juris. § 4518 (2d ed. West 2013) (collecting cases).  The Restatement also applies the substantial

---

against forum shopping.  In the interest of creating a nationally uniform rule, the Lindsay court applied federal choice-of-law rules.  In In re Gaston & Snow, supra, the Second Circuit Court of Appeals endorsed a different approach, preferring to follow the Klaxon rule and apply the choice-of-law rules of the forum state where no significant federal interest would require a different result.

relationship test.  See Restatement § 187(2).  Additionally, this Court has previously determined that New Hampshire law and federal choice-of-law rules are not in conflict.  Umbrellabank, FSB v. Michel (In re Michel), 2002 BNH 033 at 5, 2002 WL 31777641 (Bankr. D.N.H. 2002).

Here, the Agreement contains a choice-of-law clause that requires its terms to be interpreted under Colorado law.  The Agreement has a significant relationship to Colorado—all of the corporate defendants have their principal places of business in Colorado, and both individual defendants reside there.  The Plaintiff argues that New Hampshire has the "most significant" relationship to the Agreement, as New Hampshire is where the Debtors' business was located.  The test is not the "most significant" relationship test, however, so this argument misses the mark.  The Plaintiff also asserts that the Court should not enforce the choice-of-law clause because the clause is part of an unconscionable contract of adhesion.  The Plaintiff has pleaded no facts that tend to show the choice-of-law clause, specifically, is "so coercive and one-sided as to have prevented the plaintiff from agreeing to its terms voluntarily."  PK's Landscaping, Inc. v. New England Tel. and Tel. Co., 128 N.H. 753, 519 A.2d 285, 287 (the standard for unconscionability under New Hampshire law).[9]  Because the Agreement has a significant relationship to Colorado, the Court will apply Colorado law.

    C.     Statute of Limitations

The Defendants argue that the Plaintiff's claims should be dismissed because they are untimely under the one-year limitations provision in the Agreement.  Rather than contesting the

---

[9] The Plaintiff has additionally argued against the application of the choice-of-law clause because he believes it will operate as a "prospective waiver" of his claim under the New Hampshire Consumer Protection Act, presumably because that claim is not asserted under Colorado law.  The Defendants did not address this issue in their motion to dismiss, and the Court does not need to cover it here, as it does not relate to the choice-of-law clause's application to the contract.

substance of that claim, the Plaintiff argues the limitations clause itself is ineffective because it is unconscionable.

Under Colorado law, "in order to support a finding of unconscionability, there must be evidence of some overreaching on the part of one of the parties such as that which results from an inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party." Davis v. M.L.G. Corp., 712 P.2d 985, 991 (Colo. 1986) (citing McMillion v. McMillion, 522 P.2d 125 (Colo. App. 1974). The Davis court also points to a number of factors which may be relevant in making the unconscionability determination: (1) a standardized agreement executed by parties of unequal bargaining strength; (2) lack of opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; (4) absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive unfairness; (6) the relationship of the parties, including factors of assent, unfair surprise and notice; and (7) all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect. Id. (collecting cases).

The Plaintiff has alleged sufficient facts to support a claim that limitations period in the Agreement is unconscionable. The Plaintiff asserts that the Agreement was a non-negotiable, form document. The Plaintiff also alleges that the Debtors were unsophisticated and had never reviewed a franchise agreement before, and were subjected to a well-planned and contrived sales presentation, which pressured them into signing the Agreement. These allegations would tend to show that the Defendants had a significantly better bargaining position. In terms of the substantive fairness, the limitations provision appears to be sufficiently one-sided, especially

given the totality of the allegations in the complaint, e.g., the Defendants' supply-chain pricing scheme. The provision limits all claims "[e]xcept with regard to Franchisee's obligation to pay Franchisor and its affiliates Royalty payments, the Marketing and Promotion Fee and other advertising fees, and other payments due from Franchisee pursuant to this Agreement or otherwise"—which can only benefit the Defendants.

At least two other federal courts have declined to dismiss lawsuits filed against Quizno's defendants, under substantially similar circumstances. In Martrano v. Quizno's Franchise Co., LLC, the court found that given the allegations in the complaint, dismissal based on the same one-year limitations provision would be premature. The court specifically notes

> that the drastically shortened limitations period in particular is not mutual, since it excepts out monetary claims by the franchisor, with no apparent reason other than to strengthen the franchisor's hand in the event of a dispute. More significantly, when considered as a whole, it appears quite plausible that the Agreement is so one-sided as to be substantively unconscionable, especially if, as Defendants contend, it affords the franchisor unbounded discretion to impose onerous supplier transactions on the franchisees.

Martrano v. Quizno's Franchise Co., LLC, No. 08-0932, 2009 WL 1704469 at *23 (W.D. Pa. June 15, 2009).[10] The Plaintiff makes similar allegations in his complaint. Given the similar contexts, the Court finds the Martrano approach persuasive. See also Bonanno v. The Quizno's Franchise Co. LLC, No. 06-02358, 2008 WL 638367 (D. Colo. March 5, 2008) (finding that the plaintiff's complaint was sufficient to avoid dismissal based on the limitations clause in the franchise agreement). Because the complaint alleges facts sufficient to make out a claim that the limitations provision is unconscionable, that provision should not be enforced against the Plaintiff at this procedural stage.

---

[10] The Martrano court was applying the Pennsylvania law on unconscionability, but noted that Colorado law was nearly the same on that point. Id. at 22 n.63.

D.  Enforceability of the Forum Selection Clause

The Plaintiff does not allege sufficient facts to render the forum selection clause unenforceable under Colorado and federal law.[11]  "[A] forum selection clause will be enforced unless the party seeking to avoid its effect proves that enforcement would be unfair or unreasonable." Edge Telecom, Inc. v. Sterling Bank, 143 P.3d 1155, 1159 (Colo. App. Ct. 2006) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972)).  The Plaintiff alleges that the forum selection clause is void as it is the product of a generally unconscionable contract that was procured by fraud.  The Plaintiff also argues that the forum selection clause is unreasonable under the M/S Bremen standard.  Notably, the Plaintiff never argues that the forum selection clause was specifically the result of fraud.  General allegations of a fraudulent or unconscionable contract, without relating those allegations to the forum selection clause in particular, will be insufficient to render the forum selection clause ineffective.  "[S]o long as a forum selection clause is itself not the result of fraud, the parties can fairly expect to litigate any issues, including the plaintiff's general allegations of fraud, in the designated forum." Edge Telecom, Inc. 143 P.2d at 1162.

As to unconscionability, the forum selection clause is distinguishable from the limitations clause discussed above. Whereas the limitations clause contains a lop-sided exemption in favor of monetary actions that the Defendants may assert, the forum selection clause applies equally to both parties.  And though the Plaintiff argues that the Colorado forum favors the Defendants, courts consider a national business's interest in having litigation take place in a predictable

---

[11]  The law of Colorado does not conflict with federal law concerning the enforcement of forum selection clauses in contracts.  Indeed, the Colorado courts cite federal law throughout their decisions.  Accordingly, the Court does not need to reach the potential choice-of-law issue, under Erie R.R. Co. v.Tompkins, 304 U.S. 64 (1938), and decide whether enforcing a forum selection clause is a substantive or procedural question.  See Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 386 n.1 (1st Cir. 2001); Lambert v. Kysar, 983 F.2d 1110, 1116 n.10 (1st Cir. 1993).

location to be reasonable as a matter of law.  Lambert v. Kysar, 983 F.2d 1110, 1121 (1st Cir. 1993) (The defendant's "interest in selecting a forum—the consolidation of litigation involving far-flung operations—was eminently reasonable.").  Accordingly, the forum selection clause is not unconscionable under the standards previously discussed.

The Plaintiff also argues that a Colorado forum would be so seriously inconvenient as to deprive him of his day in court.  To support this argument the Plaintiff states that it would be prohibitively expensive for the Debtors to travel to Colorado, given that the Debtors are "obviously in financial trouble."  This bare allegation is insufficient to show that the Colorado forum would deprive the plaintiff-chapter 7 trustee of the ability to litigate this case.  The Plaintiff has not explained how the Debtors' financial situation prohibits the bankruptcy estate from pursuing litigation in Colorado.  See Edge Telecom, 143 P.2d at 1163 ("[A]lthough plaintiffs asserted that litigating their claims in New York would be inconvenient for their witnesses and employees, they did not allege or offer any evidence to show that they would be unable to obtain a fair hearing in a New York court.").

Likewise, the allegation that the Agreement is a non-negotiable, adhesion contract is not sufficient to topple the forum selection clause.  "[T]hat the forum-selection clause is a 'boilerplate' provision does not ipso facto render it invalid."  Silva v. Encyclopedia Britannica, 239 F.3d 385, 389 (1st Cir. 2001).  Nor is it "the law that one must bargain for each and every written term of a contract."  Lambert, 983 F.2d at 1119-20.

The Plaintiff's final salvo against the forum selection clause involves an appeal to public policy.  In M/S Bremen v. Zapata, 407 U.S. 1, 15, the Supreme Court counseled that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would

contravene a strong public policy of the forum in which suit is brought." The Plaintiff argues that enforcing the forum-selection clause would violate a strong public policy of New Hampshire, embodied in N.H. R.S.A. 508-A:3.[12] Assuming that Bremen requires consideration of this statutory provision, the factors pointed to in R.S.A. 508-A:3 cover the same points that the Court discussed above. Accordingly, absent any allegations that the forum selection clause itself was procured by the types of misconduct described in R.S.A. 508-A:3(IV), enforcement of the forum selection clause does not appear to violate any relevant public policy interest that New Hampshire may have.

### E. Dismissal or Transfer

In the First Circuit, dismissal without prejudice is the proper procedure when a defendant moves to enforce a choice-of-forum clause via a motion to dismiss for failure to state a claim. Silva 239 F.3d at 387-88. Here, the Defendants have requested dismissal. The Court, however, feels that under the circumstances dismissal would be inequitable. Accordingly, this proceeding shall be transferred to the United States District Court for the District of Colorado, "in the interest of justice," pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 7087.[13] Transfer avoids turning this dismissal without prejudice into a de facto dismissal with prejudice due to any

---

[12] In full, R.S.A. 508-A:3 reads:

If the parties have agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court will dismiss or stay the action, as appropriate, unless:
I. The court is required by statute to entertain the action;
II. The plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action;
III. The other state would be a substantially less convenient place for the trial of the action than this state;
IV. The agreement as to the place of the action was obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; or
V. It would for some other reason be unfair or unreasonable to enforce the agreement.

[13] Section 1412 provides that "a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Rule 7087 implements section 1412: "On motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2)."

statute of limitations that may bar the Plaintiff from re-filing the complaint in the proper forum—a result that would be inequitable.  This result conserves the limited resources of the bankruptcy estate by avoiding new filing fees, saves the time and effort that would be spent redrafting pleadings, and preserves the work the parties have done thus far to create a record and narrow the legal issues.  Additionally, transfer, rather than dismissal serves the interests of justice by moving this case to a final disposition on the merits more swiftly, as it has already been pending for over six months.  If the case is dismissed, the parties will be required to start from the beginning.  On these grounds, the Court shall transfer, rather than dismiss this case to give effect to the forum selection clause in the Agreement.[14]

## IV. CONCLUSION

For the foregoing reasons, the Court shall, transfer this proceeding to the United States District Court for the District of Colorado.  This opinion constitutes the Court's findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(2) and Bankruptcy Rule 7052.  The Court shall issue a separate order reflecting the conclusions set forth in this opinion.

ENTERED at Manchester, New Hampshire.

Date:   November 27, 2013                    /s/ Bruce A. Harwood
                                             Bruce A. Harwood
                                             Chief Bankruptcy Judge

---

[14] The Court shall also transfer the Plaintiff's claims against QCE Finance, despite that party's default.  Supra at note 4.  The Court has no reason to believe that the forum selection clause in the Agreement applies with any less force to claims asserted against that particular Quizno's defendant.